CLAUDIA A. FULLERTON *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

CARMEN COCCHIOLA *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT
(SC 17601)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 15—officially released December 26, 2006

*Thadd A. Gnocchi,* assistant attorney general, with whom was *Thomas P. Clifford III,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellant (defendant).

*Susan L. Garten,* with whom was *Gregory Bass,* for the appellee (plaintiff Claudia A. Fullerton).

*Eric R. Brown,* for the appellee (plaintiff Carmen Cocchiola).

*Charles Krich* and *Nancy B. Alisberg* filed a brief for the commission on human rights and opportunities et al. as amici curiae.

*Opinion*

ZARELLA, J. The principal issue in this consolidated appeal is whether the requirement in § 31-235-6 (a)[1] of the Regulations of Connecticut State Agencies that applicants for unemployment compensation benefits must be available for full-time work is in violation of the requirement in General Statutes § 46a-76 (a) that physical or mental disability shall not be considered as a limiting factor in state administered programs involving the distribution of funds to qualify applicants for benefits authorized by law. The defendant, the administrator of the Unemployment Compensation Act,[2] General Statutes § 31-222 et seq., appeals from the judgments of

---

[1] Section 31-235-6 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "In order to find an individual eligible for benefits for any week, the Administrator must find the individual available for full-time work during that week. . . ."

[2] We hereinafter refer to the defendant as the administrator.

the trial court sustaining the appeals of the plaintiffs, Claudia A. Fullerton and Carmen Cocchiola,[3] from the decisions of the employment security board of review (board), which affirmed the administrator's denial of their respective applications for unemployment compensation benefits. The administrator determined that the plaintiffs were ineligible for benefits because, as a result of their disabilities, they were not "available for full-time work" during the weeks for which they applied for benefits, as required under § 31-235-6 (a) of the regulations. The administrator also determined that Fullerton was ineligible for benefits because she failed to make reasonable efforts to secure full-time work during the weeks in question. See General Statutes § 31-235 (a) ("[a]n unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that . . . [2] . . . he is physically and mentally able to work and is available for work and has been and is making reasonable efforts to obtain work").

The administrator maintains on appeal that the trial court improperly sustained the plaintiffs' appeals on the ground that the board improperly considered their respective disabilities as limiting factors, in violation of § 46a-76 (a), in determining their eligibility for benefits under the regulations. We conclude, however, that the trial court lacked jurisdiction to consider the plaintiffs' claims alleging a violation of § 46a-76 (a). Accordingly, we reverse the judgments of the trial court.

The following facts were found by the employment security appeals referees. Fullerton, who has long been diagnosed with bipolar disorder, worked full-time for fifteen years prior to 1995. In 1995, she suffered a back injury in an automobile accident and discontinued working for three and one-half years. In August, 1996,

---

[3] We hereinafter refer to Fullerton and Cocchiola collectively as the plaintiffs.

she began receiving social security benefits. In July, 1999, she returned to work on a part-time basis until October 12, 2000, averaging approximately thirteen to fifteen hours per week.

Subsequently, she filed for five weeks of unemployment compensation benefits, from October 29, 2000, to December 2, 2000. On December 6, 2000, she attended a benefit rights interview. The clinical social worker assigned to Fullerton's case wrote a letter dated December 5, 2000, in support of Fullerton's request for benefits. In that letter, she indicated that Fullerton was unable to work full-time due to her medical condition but that part-time employment would be advantageous.

Fullerton made several unsuccessful attempts to obtain employment after October 29, 2000. In November, 2000, she applied for a part-time job at Showcase Cinema in Enfield, although she did not complete those portions of the application regarding the hours that she would be available to work. In November, 2000, she requested an application for part-time work for the Salvation Army but failed to submit it due to her concerns about the twelve to twenty hour workweek and the physical demands of the job. In December, 2000, she requested an application from Shaw's Supermarkets for part-time work but did not submit the application because of its complexity and her concerns regarding the number of hours she would be required to work. On January 5, 2001, she secured employment with American Legion, working approximately four hours per week.[4]

[4] On December 16, 2000, Fullerton sustained injuries resulting from a fall. On or about January 12, 2001, she went to a chiropractor, who provided her with a note indicating that she was subject to limitations with respect to lifting, bending and twisting. Fullerton scheduled surgery for January 29, 2001, but did not know how long she would be disabled as a result of the surgical procedure.

Meanwhile, the administrator determined on December 7, 2000, that Fullerton was ineligible for unemployment compensation benefits because she was physically unable to work full-time due to her medical problems. On December 28, 2000, Fullerton appealed from the administrator's decision to the employment security appeals referee (referee). On February 6, 2001, the referee affirmed the administrator's decision denying Fullerton benefits, from October 29, 2000, through January 27, 2001. The referee concluded that Fullerton had not made reasonable efforts to obtain work and was not available for work under Connecticut law because she was not available for full-time work.

On February 23, 2001, Fullerton appealed from the referee's decision to the board, which adopted the referee's findings of fact. On June 27, 2003, the board affirmed the decision of the referee and denied Fullerton benefits, from October 29, 2000, through January 27, 2001. On July 25, 2003, Fullerton appealed from the decision of the board to the trial court.

In the second case, Cocchiola suffered an injury to his right leg in 1994. The injury left him with a permanent impairment to his leg that caused him to have difficulty walking and required him to use a cane for improved mobility. As a result of the injury, Cocchiola's physician diagnosed him with severe vascular disease of the lower right extremity and limited him to a maximum of six hours of work per day, including walking, standing or sitting, for a maximum of five days per week.

Following his injury, Cocchiola's former employer, Whyco Technologies, Inc., provided him with part-time employment as a foreman. On April 27, 2001, the company informed him that it no longer could provide him with part-time work in that capacity. Thereafter, Cocchiola, who possessed a valid driver's license and was able to transport himself to and from potential employ-

ment, sought a position as a metal finishing worker. Cocchiola made it known that he preferred to work between the hours of 9 a.m. and 3 p.m., and contacted at least three new potential employers during each week for which he sought unemployment benefits.

Cocchiola attended a benefit rights interview on May 1, 2001, and subsequently filed a claim for unemployment compensation benefits, effective April 29, 2001. On May 18, 2001, the administrator determined that he was ineligible for benefits and denied his claim, reasoning that Cocchiola's injury rendered him unavailable for full-time work as required under § 31-235-6 (a) of the regulations. On May 22, 2001, Cocchiola appealed from the administrator's decision to the referee. On October 30, 2001, the referee affirmed the administrator's decision, concluding that, under existing Connecticut law, Cocchiola was ineligible for benefits because of his unavailability for full-time work. Cocchiola appealed to the board, which adopted the referee's findings of fact and affirmed the referee's decision on June 27, 2003. On July 24, 2003, Cocchiola appealed from the board's decision to the trial court. On December 22, 2003, the trial court granted the administrator's motion to consolidate the plaintiffs' appeals.

In their individual appeals to the board, the plaintiffs had challenged the validity of the requirement under § 31-235-6 (a) of the regulations that claimants must be available for full-time work, arguing that the requirement was in violation of the Connecticut constitution as well as various state and federal statutes, including General Statutes § 46a-71 (a), which provides in relevant part that "[a]ll services of every state agency shall be performed without discrimination based upon . . . mental disability . . . or physical disability," General Statutes § 46a-76 (a), which provides in relevant part that "mental disability . . . or physical disability . . . shall not be considered as limiting factors in state-

administered programs involving the distribution of funds to qualify applicants for benefits authorized by law," and Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.,[5] which prohibits public entities from discriminating against persons with disabilities. In both cases, however, the board concluded that it did not have jurisdiction to rule on the constitutionality of a duly enacted regulation or on the plaintiffs' contentions that the regulation violated state and federal statutes other than the Unemployment Compensation Act, stating that it would leave those issues for the courts to decide.

In their appeals to the trial court, the plaintiffs continued to argue that the regulation violated state and federal statutory and constitutional provisions prohibiting discrimination on the basis of physical or mental disability. The plaintiffs specifically argued that the regulation, as applied to them, violated: (1) Title II of the ADA; (2) § 46a-71 (a); (3) § 46a-76 (a); (4) the equal protection clause of the constitution of Connecticut, article first, § 20, as amended by article twenty-one of the amendments; and (5) the equal protection clause of the fourteenth amendment to the United States constitution.

The trial court initially determined that it could consider the plaintiffs' statutory and constitutional claims pursuant to *Rayhall* v. *Akim Co.*, 263 Conn. 328, 819

---

[5] Title 42 of the United States Code, § 12132, provides in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2000).

The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131 (2) (2000).

A.2d 803 (2003). In *Rayhall,* we concluded that General Statutes § 31-301b provided a jurisdictional basis for the trial court to consider a constitutional challenge to the Workers' Compensation Act, even though the workers' compensation review board did not have jurisdiction to hear the claim, because § 31-301b provides that "[a]ny party aggrieved by the decision of the Compensation Review Board upon *any question or questions of law arising in the proceedings* may appeal the decision of the Compensation Review Board to the Appellate Court." (Emphasis added.) General Statutes § 31-301b; see *Rayhall* v. *Akim Co.,* supra, 339–40.

On April 12, 2005, the trial court rendered judgments sustaining the appeals insofar as they were based on the unavailability of the plaintiffs to work full-time by reason of their respective physical or mental disabilities. The court concluded that § 31-235-6 (a) of the regulations "violate[d] the clear command of . . . § 46a-76 (a) not to consider 'physical disability . . . as [a] limiting [factor] in state-administered programs involving the distribution of funds to qualify applicants for benefits authorized under law.' " To the extent that Fullerton also challenged the board's decision that she had failed to make reasonable efforts to seek full-time work during the period for which she sought benefits, the trial court remanded the case to the board to ascertain the precise basis on which the board had found that her efforts were unreasonable, including whether the basis for the finding was her failure to seek full-time employment that was not suitable because of her physical or mental disability. The court also determined that the record lacked sufficient evidence to consider the plaintiffs' claims under Title II of the ADA. In light of these rulings, the court did not reach the plaintiffs' constitutional claims and did not consider their claims alleging a violation of § 46a-71.

On appeal,[6] the administrator contends that § 31-235-6 (a) of the regulations does not violate the state or federal constitutions or the state and federal antidiscrimination laws cited by the plaintiffs. Following oral argument, this court, sua sponte, requested supplemental briefing on the issue of whether the board or the trial court, on appeal from the board, had jurisdiction to hear the plaintiffs' claims that the regulation violated Title II of the ADA. In their supplemental briefs to the court, the parties agreed that the board could not hear those claims because there was no statutory authority to do so. Both parties also agreed that the trial court *did* have jurisdiction to hear those claims on appeal from the board. We conclude that neither the board nor the trial court had subject matter jurisdiction to consider the plaintiffs' claims that § 31-235-6 (a) of the regulations violates Title II of the ADA. We additionally conclude that neither the board nor the trial court had subject matter jurisdiction to consider *any* of the plaintiffs' state or federal statutory or constitutional claims challenging the validity of the regulation.

"[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 755, 900 A.2d 1 (2006).

I

We begin by examining the jurisdiction of the board to consider the plaintiffs' constitutional and statutory

---

[6] The administrator appealed from the judgments of the trial court to the Appellate Court, and we transferred the administrator's consolidated appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

claims challenging the validity of the regulation. "Administrative agencies . . . are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon . . . the statutes vesting them with power and they cannot confer jurisdiction upon themselves. . . . We have recognized that [i]t is clear that an administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . It cannot modify, abridge or otherwise change the statutory provisions . . . under which it acquires authority unless the statutes expressly grant it that power." (Internal quotation marks omitted.) *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control*, 270 Conn. 778, 789, 855 A.2d 174 (2004). Accordingly, whether the board had jurisdiction to hear the plaintiffs' claims requires an examination of the relevant statutes.

Statutory construction is a question of law over which we exercise plenary review. E.g., *State* v. *Hardy*, 278 Conn. 113, 119, 896 A.2d 755 (2006). "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *D'Angelo Development & Construction Co.* v. *Cordovano*, 278 Conn. 237, 243, 897 A.2d 81 (2006). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

"In the processing of unemployment compensation claims, [the governing statutes[7] provide that] the admin-

---

[7] Unemployment compensation appeals are exempt from the Uniform Administrative Procedure Act pursuant to General Statutes § 4-186, which provides in relevant part: "(a) Appeals from the decisions of the administrator of the Unemployment Compensation Act, appeals from decisions of the employment security appeals referees to the board of review, and appeals

istrator, the referee and the employment security board of review decide the facts and then apply the appropriate law." *Petyan* v. *Ellis*, 200 Conn. 243, 248, 510 A.2d 1337 (1986). As we explained in *Finkenstein* v. *Administrator, Unemployment Compensation Act,* 192 Conn. 104, 470 A.2d 1196 (1984), "[t]he administrator is the labor commissioner. General Statutes § 31-222 (c). [The administrator] is charged with the initial responsibility of determining whether claimants are entitled to unemployment benefits. [See generally] General Statutes § 31-241. Upon the filing of a claim, the administrator or a representative (examiner) designated by him must examine the claim and on the basis of the facts found by him, determine whether the claim is valid. [General Statutes § 31-241 (a)]. Such determinations are made after an evaluation of evidence presented in person or in writing at a hearing called for such purpose. [General Statutes § 31-241 (a)]. This initial determination becomes final unless the claimant or the employer files an appeal within twenty-one days after notification of the determination is mailed. [General Statutes § 31-241 (a)]. Appeals are taken to the employment security appeals division which consists of a referee section and the board of review. [See] General Statutes §§ 31-237a, 31-237b. The appeals division is separate and apart from the administrator; *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 2, 434 A.2d 293 (1980); and by statute the administrator is deemed to be a party to any proceeding

from decisions of the Employment Security Board of Review to the courts, as is provided in [the Unemployment Compensation Act] . . . are excepted from the provisions of this chapter.

"(b) In the case of conflict between the provisions of this chapter and the provisions of chapter 567 and provisions of the general statutes relating to limitations of periods of time, procedures for filing appeals, or jurisdiction or venue of any court or tribunal governing unemployment compensation, employment security or manpower appeals, the provisions of the law governing unemployment compensation, employment security and manpower appeals shall prevail. . . ."

. . . before a referee, the board or any reviewing court. General Statutes § 31-249c." (Internal quotation marks omitted.) *Finkenstein* v. *Administrator, Unemployment Compensation Act,* supra, 108.

"The first stage of claims review lies with a referee who hears the claim de novo. The referee's function in conducting this hearing is to make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the provisions . . . of the law. General Statutes § 31-244. This decision is appealable to the board of review. General Statutes § 31-249. Such appeals are heard on the record of the hearing before the referee although the board may take additional evidence or testimony if justice so requires. [General Statutes § 31-249]. Any party, including the administrator, may thereafter continue the appellate process by appealing to the Superior Court and, ultimately, to [the Appellate and Supreme Courts]. [See] General Statutes [Rev. to 1983] § 31-249b [as amended by Public Acts, Spec. Sess., June, 1983, No. 83-29, § 14]." (Internal quotation marks omitted.) *Finkenstein* v. *Administrator, Unemployment Compensation Act,* supra, 192 Conn. 108–109. General Statutes § 31-249b also provides that the Superior Court "may order final disposition" of the appeal if it does not remand the case for further proceedings.

To assist in interpreting the statutory scheme, General Statutes § 31-236e (b) grants the administrator authority to "adopt regulations, in accordance with the provisions of [the Unemployment Compensation Act], which establish all necessary criteria for the determination of a claimant's eligibility for unemployment compensation benefits." Subsection (a) of the statute specifically provides that "the determination of a claimant's eligibility for unemployment compensation benefits shall be based solely on the provisions of [the

Unemployment Compensation Act] and any regulations adopted pursuant thereto." General Statutes § 31-236e (a).

With respect to the "validity" of a claim, § 31-222-13 (a) (3) of the Regulations of Connecticut State Agencies defines a "valid initiating claim" as "a claim filed by an unemployed or partially unemployed individual who meets the requirements of subdivisions (1) and (3) of subsection (a) of section 31-235 of the Connecticut General Statutes[8] . . . ." The designated subdivisions of § 31-235 (a) refer to the procedural requirements for making a claim and to whether the employer is subject to the provisions of the Unemployment Compensation Act. None of the governing statutes grants the reviewing body authority to consider issues beyond those relating to the requirements for making a claim, as expressed in § 31-235 (a), to the eligibility of the claimant and to the amount and duration of the benefits to which the

---

[8] General Statutes § 31-235 (a) provides in relevant part: "An unemployed individual shall be eligible to receive benefits with respect to any week only if it has been found that (1) he has made claim for benefits in accordance with the provisions of section 31-240 and has registered for work at the public employment bureau or other agency designated by the administrator within such time limits, with such frequency and in such manner as the administrator may prescribe, provided failure to comply with this condition may be excused by the administrator upon a showing of good cause therefor; (2) except as provided in subsection (b) of this section, he is physically and mentally able to work and is available for work and has been and is making reasonable efforts to obtain work . . . (3) he has been paid wages by an employer who was subject to the provisions of [the Unemployment Compensation Act] during the base period of his current benefit year in an amount at least equal to forty times his benefit rate for total unemployment: Provided an unemployed individual who is sixty-two years of age or older and is involuntarily retired under a compulsory retirement policy or contract provision shall be eligible for benefits with respect to any week, notwithstanding subdivisions (1) and (2) of this section, if it is found by the administrator that he has made claim for benefits in accordance with the provisions of section 31-240, has registered for work at the public employment bureau, is physically and mentally able to work, is available for work, meets the requirements of this subdivision and has not refused suitable work to which he has been referred by the administrator . . . ."

claimant is entitled. In other words, although § 31-241 (a) permits the administrator to determine the validity of an unemployment compensation "claim," insofar as it is properly filed, there is no provision in this or any other portion of the statutory scheme that permits the referee or the board to consider the validity of the governing statutes or regulations.

Furthermore, as the board notes, it is well established that claims regarding the constitutionality of legislative enactments are beyond the jurisdiction of administrative agencies; *Rayhall* v. *Akim Co.*, supra, 263 Conn. 337; and that "[a]dministrative rules and regulations are given the force and effect of law." (Internal quotation marks omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 751, 865 A.2d 428 (2005). Consequently, the board lacked authority to address the constitutional issues that the plaintiff had raised on appeal from the decision of the referee.

The procedures established to promulgate administrative rules and regulations likewise do not provide for challenges to the validity of regulations adopted to implement the unemployment compensation scheme. In its decisions dismissing the plaintiffs' appeals, the board explained: "Where the legislature authorizes an administrative agency to issue a rule, the agency utilizes a notice and comment procedure and the rule has the same binding effect as a statute, [and] that 'legislative rule' or regulation is binding on the agency itself. [1 R. Pierce, Administrative Law Treatise (4th Ed. 2002) § 6.6, pp. 353–54, citing *United States* v. *Nixon*, 418 U.S. 683, 694–96, 94 S. Ct. 3090, 41 L. Ed. 2d 1039] (1974). The administrator duly enacted [§] 31-235-6 (a) of the [regulations] pursuant to the authority conferred by . . . §§ 31-236e and 31-250. The regulation review committee and the office of the attorney general reviewed the regulation for legal sufficiency. The administrator could repeal the regulation by duly enacting another regula-

tion; see 1 R. Pierce, [supra] § 6.4, p. 342; but is not currently seeking to do so. Although the board may expand or interpret a regulation duly enacted by the administrator . . . we have no authority to determine whether the administrator's regulation violates other state or federal laws, including [Title II of the ADA]." (Citations omitted.) Accordingly, we conclude that the board lacked jurisdiction to decide the plaintiffs' state and federal statutory and constitutional claims concerning the validity of the regulation.

## II

We next consider whether the trial court had jurisdiction to consider the plaintiffs' claims, on appeal from the decision of the board, challenging the validity of § 31-235-6 (a) of the regulations. We have declared that "[t]here is no absolute right of appeal to the courts from a decision of an administrative agency. . . . Appeals to the courts from administrative [agencies] exist only under statutory authority . . . . Appellate jurisdiction is derived from the . . . statutory provisions by which it is created . . . and can be acquired and exercised only in the manner prescribed. . . . In the absence of statutory authority, therefore, there is no right of appeal from [an agency's] decision . . . ." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 756.

This court previously has considered the jurisdiction of courts to review decisions of administrative agencies and has concluded that it is limited in scope. "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on

the weight of the evidence or questions of fact. . . .
Our ultimate duty is to determine, in view of all of the
evidence, whether the agency, in issuing its order, acted
unreasonably, arbitrarily, illegally or in abuse of its dis-
cretion." (Internal quotation marks omitted.) *JSF Pro-
motions, Inc.* v. *Administrator, Unemployment
Compensation Act,* 265 Conn. 413, 417, 828 A.2d 609
(2003).

Similarly, chapter 22 of the rules of practice, which
describes the function of the trial court in unemploy-
ment compensation appeals, specifies that the court is
not to "retry the facts or hear evidence. [The trial court]
considers no evidence other than that certified to it by
the board, and then for the limited purpose of determin-
ing whether the finding should be corrected, or whether
there was any evidence to support in law the conclu-
sions reached." Practice Book § 22-9 (a). Consequently,
there is no authority under the statutes or rules of
practice that would permit the trial court to hear a
claim, on appeal from the decision of the board, chal-
lenging the validity of the regulations.

In arguing that the trial court has jurisdiction to con-
sider their claims, the plaintiffs rely on our decision in
*Rayhall* v. *Akim Co.,* supra, 263 Conn. 328, as well as
language in General Statutes § 31-249b providing that
the Superior Court "may order final disposition" of the
issues on appeal. As we previously noted, the trial court
also relied on *Rayhall* in concluding that it had jurisdic-
tion, on appeal from the decision of the board, to hear
*all* of the plaintiffs' state and federal statutory and con-
stitutional claims not specifically implicating the unem-
ployment compensation statutes. An examination of
*Rayhall,* however, leads us to conclude not only that
the trial court lacked jurisdiction to hear the ADA claim
pursuant to that case or to § 31-249b, which, although
broadly worded, does not address the jurisdictional
question, but that the court also lacked jurisdiction to

hear *any* of the plaintiffs' claims not directly related to the unemployment compensation statutes or regulations.

In *Rayhall*, the issue was whether this court had jurisdiction in an administrative appeal from the workers' compensation review board to consider a constitutional challenge to the validity of a statute that was not part of the workers' compensation scheme when the compensation review board itself lacked jurisdiction to hear the claim. See *Rayhall* v. *Akim Co.*, supra, 263 Conn. 338. We concluded that § 31-301b provided a jurisdictional basis to consider the challenge because that statute provides that "[a]ny party aggrieved by the decision of the Compensation Review Board upon *any question or questions of law arising in the proceedings* may appeal the decision of the Compensation Review Board to the Appellate Court." (Emphasis added.) General Statutes § 31-301b; see *Rayhall* v. *Akim Co.*, supra, 339–40. The statutory language regarding workers' compensation thus expressly permits the court to consider those issues actually decided by the compensation review board *and* those issues that present themselves in the proceedings or become operative as a result of the compensation review board's decision. See *Rayhall* v. *Akim Co.*, supra, 340.

There is no analogous provision in the unemployment compensation scheme. An appeal to the Superior Court from a decision of the board is permitted pursuant to General Statutes § 31-249b, which simply provides that "[a]t any time before the board's decision has become final, any party, including the administrator, may appeal to the superior court . . . ." There is no language in this or any other unemployment compensation statute suggesting that the court may hear claims on appeal from the board over which the board lacks jurisdiction. Accordingly, *Rayhall* does not support the plaintiffs' view that the trial court had subject matter jurisdiction

to consider their constitutional and statutory claims regarding the validity of the challenged regulation.

Although we conclude that the trial court did not have jurisdiction to consider the plaintiffs' claims of discrimination on appeal from the board, they were not without an alternative forum. They could have brought an independent action in Superior Court pursuant to General Statutes § 46a-99, which provides that "[a]ny person claiming to be aggrieved by a violation of any provision of sections 46a-70 to 46a-78, inclusive, or sections 46a-81h to 46a-81o, inclusive, may petition the Superior Court for appropriate relief and said court shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable." Alternatively, the plaintiffs could have filed a complaint with the commission on human rights and opportunities pursuant to General Statutes § 46a-82 (a), which provides in relevant part that "[a]ny person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. . . ." The plaintiffs failed to bring their discrimination claims in either of these alternate forums.

The judgments are reversed and the cases are remanded with direction to dismiss the plaintiffs' appeals.

In this opinion the other justices concurred.