Site Evaluation Committee
No. 2010-121

APPEAL OF CAMPAIGN FOR RATEPAYERS' RIGHTS *& a*
(New Hampshire Site Evaluation Committee)

Argued: March 10, 2011
Opinion Issued: July 21, 2011

*Orr & Reno, P.A.*, of Concord (*Douglas L. Patch* and *Jeremy D. Eggleton* on the joint brief, and *Mr. Patch* orally), for appellant TransCanada Hydro Northeast, Inc.; *Bostock Law, PLLC*, of Exeter (*Patrick Arnold* on the joint brief), for appellants Campaign for Ratepayers' Rights and Union of Concerned Scientists; *Melissa Hoffer*, of Concord, on the joint brief, for appellant Conservation Law Foundation; *James T. Rodier*, of Portsmouth, on the joint brief, for appellants Freedom Logistics, LLC and Halifax-American Energy Co., LLC; and Jackson Perry, on the joint brief, *pro se.*

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Wilbur A Glahn, III* on the brief and orally), for the appellee.

HICKS, J. The appellants, Campaign for Ratepayers' Rights, Conservation Law Foundation, Freedom Logistics, LLC, Halifax-American Energy Co., LLC, TransCanada Hydro Northeast, Inc., Union of Concerned Scientists and Jackson Perry, appeal orders of the New Hampshire Site Evaluation Committee (the committee) denying their motion for declaratory judgment. We vacate because the committee lacked subject matter jurisdiction.

The record supports the following facts. This case involves the installation of a wet flue gas desulphurization system (also known as a "scrubber") at Merrimack Station, an electricity generating facility in Bow owned by the appellee, Public Service Company of New Hampshire (PSNH). *See generally Appeal of Stonyfield Farm*, 159 N.H. 227, 228-29 (2009) (discussing scrubber technology at Merrimack Station). The installation of such a system was mandated by the legislature in 2006. *See id.* RSA 125-O:13, I, provides:

> The owner shall install and have operational scrubber technology to control mercury emissions at Merrimack Units 1 and 2 no later than July 1, 2013. The achievement of this requirement is contingent upon obtaining all necessary permits and approvals from federal, state, and local regulatory agencies and bodies; however, all such regulatory agencies and bodies are encouraged to give due consideration to the general court's finding that the installation and operation of scrubber technology at Merrimack Station is in the public interest. The owner shall make appropriate initial filings with the department and the public utilities commission, if applicable, within one year of the effective date of this section, and with any other applicable regulatory agency or body in a timely manner.

RSA 125-O:13, I (Supp. 2010).

In March 2009, six of the appellants (Campaign for Ratepayers' Rights, Conservation Law Foundation, Freedom Logistics, LLC, Halifax-American Energy Co., LLC, TransCanada Hydro Northeast, Inc. and Union of Concerned Scientists), together with another party not currently before us (collectively, the Moving Parties), filed a motion for declaratory ruling with the committee seeking a determination whether the committee "ha[d] jurisdiction over mercury scrubber modifications to Merrimack Station . . . because said modifications would constitute a 'sizeable addition' to the existing facility within the meaning of RSA 162-H:5, I." At the time the Moving Parties filed their motion, that statute provided that "[n]o person shall commence to construct any bulk power or energy facility within the state unless it has obtained a certificate pursuant to this chapter," and further provided that "[s]uch certificates are required for sizeable additions to existing facilities." RSA 162-H:5, I (2002) (amended 2009).

The Moving Parties alleged that they "include[d] non-profit ratepayer and environmental organizations, merchant generators, and competitive energy suppliers operating in New Hampshire," and sought a declaratory ruling pursuant to New Hampshire Administrative Rule, Site 203.01. They argued:

> Given the size, extent, and cost of the modifications to Merrimack Station, [we] believe that PSNH should have submitted to the Committee either an application for approval of the modifications, as required by RSA 162-H:5, I . . . or a request for a determination that the modifications to Merrimack Station do not constitute a "sizeable addition". . . .

The committee determined that it had jurisdiction to consider the Moving Parties' motion. It then considered whether the scrubber project and an additional project called the "[t]urbine [u]pgrade," involving the replacement of a turbine at Merrimack Station, were "a single project or separate projects for [its] consideration in this docket." They concluded that the two projects were "separate and distinct from each other," that neither constituted a sizeable addition to the facility, and, therefore, that neither required a Certificate of Site and Facility. Finally, the committee imposed "the costs of the action, including the fees of Committee Counsel, the fees for the court reporter, and the secretarial fees," on the Moving Parties, jointly and severally.

The moving parties filed a motion for rehearing. A motion for rehearing and petition for review was also filed by 153 individuals, primarily from the towns of Pembroke, Hooksett, Hopkinton and Contoocook. Included among the 153 individuals was Jackson Perry, an appellant now before us. The committee denied the motions.

On appeal, the appellants contend that the committee made a number of errors leading to an erroneous ruling that the scrubber project is not a sizeable addition to Merrimack Station. They also argue that the committee erred in imposing upon them the costs of the proceedings. PSNH counters that the appellants lacked standing to proceed before the committee and "failed to meet their burden of proof to establish that the [s]crubber [p]roject was a 'sizeable addition'" to the facility.

Decisions of the committee are "reviewable in accordance with RSA 541." RSA 162-H:11 (2002). Accordingly, our standard of review is set forth in RSA 541:13:

> [A]ll findings of the [committee] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007). The appellants, as the parties seeking to set aside the committee's order, bear the burden of proof "to show that the same is clearly unreasonable or unlawful." *Id.*

We first address the standing issue. PSNH presented the following question in its brief:

> Did the Committee err in finding that the Appellants could proceed with a "Motion for Declaratory Ruling" when RSA 162-H:2, XI and X-a (2009) establish that such a request is a "Petition" that may only be brought by certain "Petitioners," and where Appellants do not qualify for that status and have not alleged or demonstrated injury in fact?

The appellants assert that this issue should be deemed waived because PSNH failed to raise it in a cross-appeal. Supreme Court Rule 16(3)(b) provides that the questions presented for review in a party's brief "shall be the same as the question previously set forth in the appeal document" unless "the supreme court has granted a motion to add such question." SUP. CT. R. 16(3)(b). "Motions to add a question may be filed only by a party who filed an appeal document (including a party who filed a cross-appeal). . . ." *Id.* PSNH did not file a cross-appeal. Thus, the additional question presented in its brief would normally be deemed waived. *See Unit Owners Assoc. of Summit Vista v. Miller*, 141 N.H. 39, 43 (1996) (treating issue not raised in defendant's notice of cross-appeal as waived).

▮Nevertheless, when the question of standing implicates the tribunal's subject matter jurisdiction, it may be raised at any time. *See, e.g., Asmussen v. Comm'r, N.H. Dep't of Safety*, 145 N.H. 578, 588 (2000) (stating that "a challenge to a party's standing on the ground that no actual controversy exists constitutes a challenge to the court's subject matter jurisdiction, which may be raised at any point in the proceedings"). "Administrative agencies are granted only limited and special subject matter jurisdiction . . . ." *Appeal of Amalgamated Transit Union*, 144 N.H. 325, 327 (1999) (quotation and brackets omitted). That jurisdiction "is dependent entirely upon the statutes vesting [the agency] with power and [the agency] cannot confer jurisdiction upon [itself]." *Fullerton v. Administrator*, 911 A.2d 736, 742 (Conn. 2006) (quotation and ellipsis omitted). Furthermore, a tribunal that "exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." *Figueroa v. C and S Ball Bearing*, 675 A.2d 845, 847 (Conn. 1996) (quotation omitted). Thus, where the legislature has provided that only certain persons or entities can invoke an agency's jurisdiction, the question of standing under the applicable statute is an issue of subject matter jurisdiction of the agency. *Cf. id.* at 850 (affirming dismissal of appeal to compensation review board for lack of subject matter jurisdiction where appealing party did not have standing under the workers' compensation act to invoke the commission's jurisdiction). Accordingly, the issue of standing here is not waived.

The issue of whether the appellants had standing under RSA chapter 162-H "is a matter of statutory construction; accordingly, we must begin our analysis by considering the plain meaning of the words of the statute." *Roberts v. General Motors Corp.*, 138 N.H. 532, 535-36 (1994) (quotation omitted). At the time the Moving Parties filed their motion, RSA 162-H:2, X-a (2002) (repealed 2009), defined the term "[p]etition" to mean "a request to the committee to rule on the applicability of this chapter to a particular proposed bulk power supply facility or energy facility." RSA 162-H:2, XI defined "[p]etitioner" to mean:

a person filing a petition meeting any of the following conditions:

(a) A petition endorsed by 100 or more registered voters in the host community or host communities.

(b) A petition endorsed by 100 or more registered voters from abutting communities.

(c) A petition endorsed by the board of selectmen of the host community or 2 or more boards of selectmen of abutting communities.

(d) A petition filed by the potential applicant.

RSA 162-H:2, XI (2002) (amended 2009). The appellants contend, and for purposes of this appeal, we assume without deciding, that a further petition requirement applied in this case pursuant to RSA 162-H:2, VII. That provision defined " '[e]nergy facility' " to include "any other facility which the applicant or 2 or more petition categories as defined in RSA 162-H:2, XI request and the committee agrees, or which the committee determines requires a certificate, consistent with the findings and purposes set forth in RSA 162-H:1." RSA 162-H:2, VII (2002) (amended 2009). Thus, the appellants assert that "two or more 'Petitioners' as defined by the statute may bring [a project] before the Committee."

PSNH argues that despite being captioned as a motion for declaratory ruling, the Moving Parties' motion is a petition as defined in RSA 162-H:2, X-a. We agree. The Moving Parties sought a ruling as to whether the scrubber project constitutes a sizeable addition to Merrimack Station, which, if so, would have required PSNH to obtain a certificate pursuant to RSA chapter 162-H. *See* RSA 162-H:5, I. In essence, then, the Moving Parties requested the committee to rule upon the applicability of that chapter to a particular facility. *See* RSA 162-H:2, X-a. Thus, the "motion" was, in substance, a petition under RSA 162-H:2, X-a.

PSNH further asserts that RSA 162-H:2, XI limits the persons or entities that may file a petition to those enumerated in the statute. Again, we agree. "We reiterate the familiar axiom of statutory construction *expressio unius est exclusio alterius*: Normally the expression of one thing in a statute implies the exclusion of another." *St. Joseph Hosp. of Nashua v. Rizzo*, 141 N.H. 9, 11-12 (1996) (quotation omitted). "Here, the legislature specified which entities would possess the right to" file a petition with the committee, and we will not add to that list "in the absence of a clear showing of legislative intent." *Id.* at 12. As PSNH notes, the appellants do not fall within any of the enumerated categories of permitted petitioners.

The appellants counter that the committee's jurisdiction does not depend upon "whether a particular procedure was followed for bringing the project before the Committee, but on the size and/or nature of the proposed project itself." We agree that the committee exercises jurisdiction over certain projects based upon whether they meet the statutory definition of " '[e]nergy facility' " or are found to be a sizeable change or addition

thereto, *see* RSA 162-H:2, VII, :5, I; however, as noted above, that jurisdiction can only be invoked "under the precise circumstances and in the manner particularly prescribed by the enabling legislation." *Figueroa*, 675 A.2d at 847 (quotation omitted). Here, a "[p]etition" can only be filed by a "[p]etitioner." RSA 162-H:2, X-a, XI.

The appellants nevertheless argue that "the statute sets forth three separate avenues for a given energy facility, or sizeable addition, to come before the Committee: the builder of the project, or applicant, may bring it before the Committee; two or more "Petitioners" as defined by the statute may bring it before the Committee; or the Committee may assume jurisdiction on its own motion." They appear to contend that because the committee can assume jurisdiction *sua sponte*, it does not matter how a project is brought to the committee's attention and thus their motion bringing the scrubber project before the committee was proper. We need not address this argument, however, because it is counterfactual: the committee did not assume jurisdiction on its own motion, but, rather, appears to have assumed that the appellants had standing to bring the action.

■ Finally, the appellants rely upon New Hampshire Administrative Rule, Site 203.01 for authority to bring their motion for declaratory ruling. That rule provides, in part: "Any person may submit a motion for declaratory ruling from the committee on matters within its jurisdiction by filing an original request and 15 copies with the committee." N.H. ADMIN. RULES, Site 203.01. "Rules adopted by State boards and agencies may not add to, detract from, or in any way modify statutory law." *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 568 (1978). Nor may an agency "confer jurisdiction upon [itself]." *Fullerton*, 911 A.2d at 742. Therefore, where the appellants lacked standing under RSA 162-H:2, XI, the committee could not, by rule, confer standing upon them to bring the functional equivalent of a "petition" under the name "motion for declaratory ruling."

The appellants nevertheless argue that "[f]ar from improperly expanding the powers and jurisdiction of the Committee far beyond its enabling statute, this provision is in fact *mandated* by RSA 541-A:16, I(d)." (Quotation and brackets omitted.) That statute provides that "[i]n addition to other rulemaking requirements imposed by law, each agency shall . . . [a]dopt rules relating to filing petitions for declaratory rulings and their prompt disposition." RSA 541-A:16, I(d) (2007).

■ The appellants' argument is misplaced. We interpret RSA 541-A:16, I(d) to authorize the promulgation of rules for entertaining motions for declaratory rulings in proceedings over which the agency is already validly exercising jurisdiction. It does not empower an agency to confer standing

upon a party who has not been granted standing under the agency's enabling statute. *Cf. Figueroa*, 675 A.2d at 847. We conclude that the appellants lack standing under RSA 162-H:2, XI and, therefore, that the committee lacked subject matter jurisdiction. Accordingly, we vacate the committee's order on the merits.

The appellants next challenge the imposition upon them of the costs of the committee's proceedings. Although we have determined that the committee lacked jurisdiction to decide the merits of the appellants' petition, we will assume, without deciding, that this ruling is not dispositive of the issue of the committee's authority to impose costs upon them.

■ The appellants assert that "[a]t the outset it is important to remember that each of the Appellants, except Jackson Perry (who was part of the subsequent Motion for Rehearing only), has standing to challenge the Committee's order imposing the costs of its proceedings on them as moving parties." We agree, noting that the appellants' standing to appeal to this court is a separate issue from their standing before the committee. *See New Hampshire Bankers Ass'n v. Nelson*, 113 N.H. 127, 128-29 (1973) (standing under RSA chapter 541 requires only injury in fact, not showing that asserted interest is in zone of interests regulated or protected by the statute).

■ RSA 541:3 provides:

> Within 30 days after any order or decision has been made by the [committee], any party to the action or proceeding before the [committee], *or any person directly affected thereby*, may apply for a rehearing in respect to any matter determined in the action or proceeding, or covered or included in the order, specifying in the motion all grounds for rehearing, and the [committee] may grant such rehearing if in its opinion good reason for the rehearing is stated in the motion.

RSA 541:3 (2007) (emphasis added). After the committee rules upon an application for rehearing, the applicant may appeal that ruling to the supreme court. RSA 541:6 (2007). We conclude that each of the appellants subject to the committee's order imposing costs on the Moving Parties is "directly affected" by that order, RSA 541:3, and, having moved for rehearing before the committee, has standing to appeal to this court.

The appellants argue that the committee "had no express, implied or inherent authority to impose its costs, including attorneys' fees, on [them]." They first contend that "RSA [chapter] 162-H contains no express author-ity to impose the costs of [the committee's] proceedings on Appellants" and that "[t]he only power to impose fees and costs is enumerated at RSA

162-H:10, V, which delegates authority to the Committee to impose its proceeding costs and outside counsel fees on the 'applicant.' " We agree. At the time these proceedings commenced, RSA 162-H:10, V provided:

> The site evaluation committee and counsel for the public and, if a bulk power supply facility application, the commission, shall jointly conduct such reasonable studies and investigations as they deem necessary or appropriate to carry out the purposes of this chapter and may employ a consultant or consultants, legal counsel and other staff in furtherance of the duties imposed by this chapter, the cost of which shall be borne by the applicant in such amount as may be approved by the committee in the case of an energy facility, or the committee and the commission in the case of a bulk power supply facility. The site evaluation committee, the commission, and counsel for the public, as provided for by RSA 162-H:9, are further authorized to assess the applicant for all travel and related expenses associated with the processing of an application under this chapter.

RSA 162-H:10, V (2002) (amended 2009).

In imposing its costs upon the appellants, the committee reasoned that "it can reasonably be found that the Moving Parties are the 'applicant' in the context of this docket. To 'apply' means 'to ask or seek aid[]', Websters II New Collegiate Dictionary, Third Edition, which is precisely what the Moving Parties did in filing their Motion with the Committee." We agree with the appellants that this was error. Although the statute contains no definition of the term, the committee's rules define "[a]pplicant" as "any person seeking to construct and operate any energy, renewable energy or bulk power supply facility within this state." N.H. ADMIN. RULES, Site 102.03. "The law of this State is well settled that an administrative agency must follow its own rules and regulations." Appeal of Town of Bethlehem, 154 N.H. 314, 327 (2006) (quotation omitted). Because the committee's treatment of the appellants as applicants conflicts with Rule 102.03, that rationale cannot stand as a justification for the imposition of costs.

The committee also found that it had inherent authority to assess costs:

> It is important to note that the Site Evaluation Committee meets on an "ad hoc" basis, has no formal staff, and has no budget provided for its operation by the state.

> . . . .

. . . The Committee finds that inherent in the authority to conduct hearings is the authority to assess the costs of those hearings. Otherwise, the Committee's enabling statute, RSA [chapter] 162-H, would have provided a method and means for the funding of the operations of the Committee.

We disagree. The committee's finding is contrary to *Appeal of Land Acquisition*, 145 N.H. 492 (2000), *superseded by statute as stated in Appeal of Hardy*, 154 N.H. 805 (2007). There, we rejected an "assertion that the board [of tax and land appeals] has inherent authority to award attorney's fees," stating that "[w]hile a court may have such inherent authority, the same is not true for a quasi-judicial administrative body. The remedial authority of such a body is expressly limited by statute." *Id.* at 498 (citation omitted).

Nor do we find any such authority implied in the statute. We agree with the appellants that RSA 162-H:10, V "demonstrates that the Legislature knew how to delegate cost allocation powers to the Committee when it chose to do so." "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add words that the legislature did not include." *Appeal of Town of Bethlehem*, 154 N.H. at 319. Accordingly, we conclude that the committee lacked authority to impose costs and fees upon the appellants and we vacate that portion of its order.

Finally, we address the standing claim of the individual appellant, Jackson Perry. He argues that "the construction of the Scrubber Project directly affects him" because he "can view the Scrubber Project's new 455 foot chimney from his home . . . directly across the Merrimack River and just a few hundred feet downwind from Merrimack Station."

It is not clear whether Perry is asserting that he has injury-in-fact standing before the committee or is "directly affected" by the committee's order for purposes of appealing it. *See* RSA 541:3; :6; *cf. Appeal of Richards*, 134 N.H. 148, 154 (1991) (equating directly affected standard in RSA 541:3 with "injury in fact"). We note that even assuming, without deciding, that Perry could show injury-in-fact, he, alone, lacks statutory standing to bring a petition under RSA 162-H:2, XI. Furthermore, even assuming, without deciding, that the motion for rehearing and petition for review filed by 153 individuals is a "petition endorsed by 100 or more registered voters from abutting communities," RSA 162-H:2, XI, the appellants concede that petitions from "two or more 'Petitioners' as defined by the statute" would be required to bring this project before the committee. Thus, the pleading signed by 153 individuals was alone insufficient to invoke the committee's jurisdiction.

If, on the other hand, Perry is asserting that he is "directly affected," RSA 541:3, by the committee's order for purposes of standing to appeal that order under RSA chapter 541, we note that that issue is effectively moot. As the committee lacked subject matter jurisdiction, its ruling on the merits is void. *See Gordon v. Town of Rye*, 162 N.H. 144, 149 (2011) ("Absent subject matter jurisdiction, a tribunal's order is void."). Thus, there is no valid ruling to challenge and Perry's appeal is moot.

*Vacated.*

DALIANIS, C.J., and DUGGAN and LYNN, JJ., concurred.