NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2020-0052

B&C MANAGEMENT

v.

NEW HAMPSHIRE DIVISION OF EMERGENCY SERVICES

Argued: February 18, 2021
Opinion Issued: February 23, 2022

Getman, Schulthess, Steere & Poulin, P.A., of Manchester (Heather S. Ward and Naomi L. Getman on the brief, and Heather S. Ward orally), for the plaintiff.

Gordon J. MacDonald, attorney general (Matthew T. Broadhead, senior assistant attorney general, on the brief and orally), for the defendant.

PER CURIAM. The plaintiff, B&C Management (B&C), appeals an order of the Superior Court (McNamara, J.) ruling that 911 audio recordings are exempt from disclosure under the Right-to-Know Law, RSA ch. 91-A (2013 & Supp. 2021), and denying its request for equitable discovery of a 911 audio recording in the possession of the defendant, the New Hampshire Division of Emergency Services and Communications (the Division). We affirm.

I

The facts of this case are not in dispute. On June 16, 2019, a 911 call was placed to the Division, reporting that a guest was injured in a trip-and-fall incident at B&C's Fireside Inn in Nashua. Subsequently, the guest's attorney sent a letter to B&C indicating an intent to investigate the fall. This letter did not demand a sum for settlement, and the guest had not filed a lawsuit. B&C submitted a request to the Division under the Right-to-Know Law for the audio recording of the 911 call. The Division denied this request. Then, B&C filed an action in the superior court seeking to compel the release of the 911 audio recording pursuant to the Right-to-Know Law, or, in the alternative, pursuant to the court's equitable powers. After a hearing on the merits, the trial court denied B&C's requests. It determined that RSA 106-H:14 (2013) exempted 911 audio recordings from the Right-to-Know Law, and concluded that B&C was not entitled to equitable discovery. This appeal followed.

II

We begin with the Right-to-Know Law issue. Resolving this issue requires us to engage in statutory interpretation. We review the trial court's statutory interpretation de novo. N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. 648, 652 (2020). We first examine the language of the statute and, where possible, we ascribe the plain and ordinary meanings to the words used. Id. When the language of the statute is clear on its face, its meaning is not subject to modification. Id. We will neither consider what the legislature might have said nor add words that it did not see fit to include. Id. We interpret the statute in the context of the overall statutory scheme and not in isolation. CaremarkPCS Health v. N.H. Dep't of Admin. Servs., 167 N.H. 583, 587 (2015).

RSA 106-H:14 provides:

**Information Not Subject to Right-to-Know Law.**

Any information or records compiled under this chapter shall not be considered a public record for the purposes of RSA 91-A regardless of the use of such information under paragraph I or II. Notwithstanding any provision of law to the contrary, the bureau shall only make information or records compiled under this chapter available as follows:

I. On a case-by-case basis to a law enforcement agency that requires the information or records for investigative purposes; and

II. To the department of environmental services solely for the purpose of estimating the location of wells subject to RSA 482-B. Information shared with the department of environmental services under this provision shall

2

be limited to geographic information systems data that will aid in locating such wells. The department of environmental services shall not release such shared data under RSA 91-A.

RSA 106-H:14 (emphasis added). On appeal, B&C contends that the issue before us is "the meaning of 'this chapter' as it qualifies the records that are referenced." It argues that "this chapter" refers to RSA chapter 106-H, which is entitled "Enhanced 911 System." "Enhanced 911 system" is defined in RSA 106-H:2 as "a system consisting of selective routing with the capability of automatic number and location identification at a public safety answering point, which enables users of the public telecommunications system to request emergency services by dialing the digits 911." RSA 106-H:2, VII (2013). Thus, B&C concludes, "records compiled under this chapter" as that term is used in RSA 106-H:14, means the "automatic number and location identification" referred to in RSA 106-H:2, VII. In other words, B&C contends that the only information and records not subject to the Right-to-Know Law pursuant to RSA 106-H:14 are callers' fixed-location data.

We are not persuaded. As the State points out, RSA chapter 106-H includes a section that provides that "[a]utomatic number identification and automatic location identification information consisting of the address and telephone numbers of telephone subscribers whose listings are not published in directories or listed in directory assistance offices is confidential." RSA 106-H:12, I (2013). The legislature thus specifically limited this section to apply solely to automatic number and location information. Thus, when the legislature addressed the information and records that should not be considered "public records" for the purposes of the Right-to-Know Law, if it had intended to exempt only "automatic number and location identification" as B&C contends, it could have said so. See Appeal of Beyer, 122 N.H. 934, 939 (1982); see also Appeal of Campaign for Ratepayers' Rights, 162 N.H. 245, 255 (2011) (concluding that statute demonstrated that the legislature knew how to delegate cost allocation powers to the site evaluation committee when it chose to do so). It did not do so.

Instead, the legislature provided that any information or records compiled under "this chapter," that is, under RSA chapter 106-H, "shall not be considered a public record for the purposes of" the Right-to-Know Law. RSA 106-H:14 (emphasis added). There appears to be no dispute that, absent RSA 106-H:14, the 911 recording in question would be a public record — indeed, B&C's argument that it is entitled to that recording is premised upon its position that the recording is a public record subject to the Right-to-Know Law. Accordingly, it is undisputed that the 911 recording constitutes "information created, accepted, or obtained by, or on behalf of, any public body, . . . or any public agency in furtherance of its official function." RSA 91-A:1-a, III (2013) (emphasis added) (defining "governmental records," which includes the term "public records"). Nor does B&C contend that the 911 recording was made

pursuant to any statutory authority other than RSA chapter 106-H. We agree with the Division that, in furtherance of its official function under RSA chapter 106-H, the Division recorded the information obtained from the 911 caller that B&C is seeking to obtain.

B&C's argument, based upon the definition of "enhanced 911 system" in RSA 106-H:2, VII, overlooks an essential part of the definition. As noted above, "enhanced 911 system" means "a system consisting of selective routing with the capability of automatic number and location identification at a public safety answering point, which enables users of the public telecommunications system to request emergency services by dialing the digits 911." RSA 106-H:2, VII. B&C focuses solely upon the capability of providing number and location identification — that is, the ability to identify the number and geographic location of the telephone used to call 911 and to provide a display of that information at the public safety answering point. See RSA 106-H:2, I & II (2013). That information, however, is only a portion of the information integral to the operation of the enhanced 911 system. The definition of "enhanced 911 system" itself states that it is a system that "enables users of the public telecommunications system to request emergency services by dialing the digits 911." RSA 106-H:2, VII (emphasis added). In addition to the location and number information displayed at the public safety answering point, the information provided by the caller is also received by the public safety answering point. All of that information is essential to the functioning of the enhanced 911 system. The public safety answering point has the responsibility of "transferring or relaying emergency 911 calls to other public safety agencies or private safety agencies," that is, to public and private safety agencies providing police, fire, ambulance, medical, rescue, or other emergency services. RSA 106-H:2, XII (2013); see RSA 106-H:2, IX, XI (2013). In transferring or relaying 911 calls to the appropriate public or private safety agency, the public safety answering point relies upon information provided by the 911 caller. See RSA 106-H:2, XIII (2013) (defining "relay routing" as the method of responding to a telephone request for emergency service "whereby a public service answering point notes pertinent information and relays it by telephone to the appropriate public safety agency or private safety agency for dispatch of an emergency service unit"); RSA 106-H:2, XIV (2013) (defining "transfer routing" as the method of responding to a telephone request for emergency service "whereby a public safety answering point transfers the call directly to the appropriate public safety agency or private safety agency for dispatch of an emergency service unit"). Indeed, this information is of such importance to the proper functioning of the enhanced 911 system that the legislature has deemed it a crime to dial 911 and purposely report false information which could result in the dispatch of emergency services. RSA 106-H:13 (2013). Thus, we conclude that the information provided by a 911 caller is as much a part of the "enhanced 911 system" as the automatic location and number information.

4

Because we reject B&C's contention that "under this chapter" refers solely to "automatic number and location identification," we conclude that B&C has not demonstrated that the trial court erred by ruling that it was not entitled to the 911 recording under the Right-to-Know Law. Of course, if the legislature disagrees with our interpretation, it is free to amend the statutory scheme as it sees fit within constitutional bounds. Doe v. Comm'r, N.H. Dep't of Health & Human Servs., 174 N.H. 239, 261 (2021).

III

We next turn to B&C's argument that the trial court erred by denying its request for equitable discovery of the 911 audio recording. RSA 498:1 (2010) provides in pertinent part that "[t]he superior court shall have the powers of a court of equity in the following cases: . . . discovery; [and] cases in which there is not a plain, adequate and complete remedy at law . . . ." The propriety of affording equitable relief rests in the sound discretion of the trial court to be exercised according to the circumstances and exigencies of the case. MacDonald v. Jacobs, 171 N.H. 668, 679 (2019). We review the trial court's decision whether to grant equitable relief for an unsustainable exercise of discretion. Id. In doing so, we determine whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. Id. B&C, as the party asserting that the trial court ruling is unsustainable, must demonstrate that the ruling was unreasonable or untenable to the prejudice of its case. Id.

B&C contends that the trial court erred by denying its request for equitable discovery because it has no remedy available at law to obtain the 911 audio recording, and because it needs the recording to avoid "pre-suit costs" and prejudice to its "negotiating position" with the guest who was injured at the Fireside Inn and who has not yet filed a lawsuit against it. Even assuming, as B&C argues, that it had no adequate remedy available at law, the trial court was not required to grant the equitable relief requested. The requirement that a party have no adequate remedy available at law is a necessary, but not a sufficient, condition to obtaining equitable relief. See Gutbier v. Hannaford Bros. Co., 150 N.H. 540, 541-43 (2004). The party seeking equitable relief must also demonstrate that it is appropriate under the circumstances of the particular case. See Bassett v. Company, 47 N.H. 426, 437 (1867); see also MacDonald, 171 N.H. at 679 ("[I]t is the practice of courts of equity to administer all relief which the nature of the case and facts demand.").

Here, the trial court determined that B&C failed to show why the court should grant its request for equitable discovery. The court determined that B&C has "suffered no injury" or "financial burden," and that its "position will not change" if the court "does not compel" discovery of the 911 audio recording. B&C does not challenge these factual findings on appeal. Instead, it makes a general assertion that "incorrectly named potential defendants will be put in

5

the position of continuing to incur pre-suit costs without any remedy at law." This generalized assertion is hardly sufficient to demonstrate that the trial court's ruling was unreasonable or untenable to the prejudice of B&C's case. See MacDonald, 171 N.H. at 679. Our review of the record demonstrates that, based on the facts and arguments before the trial court, the court's denial of B&C's request for equitable discovery was reasonable and did not constitute an unsustainable exercise of discretion. Accordingly, we find no error in the trial court's decision to deny B&C's request for equitable discovery.

Affirmed.

HICKS, BASSETT, and DONOVAN, JJ., concurred; HANTZ MARCONI, J., concurred in part and dissented in part.

HANTZ MARCONI, J., concurring in part and dissenting in part. I agree with my colleagues that the trial court correctly ruled when it denied B&C's request for equitable discovery at this time. I disagree, however, with my colleagues' conclusion that simply recording the 911 call as it is transferred or relayed from the caller to the responding agency transforms the recording of such call into a "record[] compiled under [RSA chapter 106-H]," RSA 106-H:14 (2013), thereby categorically excluding it from access by the public under the Right-to-Know Law. That would be akin to defining a highway bridge to include the vehicles that travel over it. Accordingly, I respectfully dissent.